Filed 12/12/14  In J.M. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re J.M., a Person Coming Under the Juvenile Court Law. | B254185<br>(Los Angeles County<br>Super. Ct. No. YJ36871) |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>J.M.,<br><br>    Defendant and Appellant. | |

APPEAL from orders of the Superior Court of the County of Los Angeles, Wayne C. Denton, Commissioner.  Affirmed.

Bruce G. Finebaum, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance by the Plaintiff and Respondent.

# INTRODUCTION

The juvenile court sustained a Welfare and Institutions Code section 602 petition against defendant and appellant J.M. (J.M.) finding true the allegation that defendant had committed misdemeanor vehicular manslaughter. On appeal, J.M.'s appointed counsel filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) requesting that this court independently review the entire record to determine if there are any issues, which if resolved in J.M.s favor, would require reversal or modification of the adjudication and disposition orders. Accordingly, we notified J.M. that he could brief any grounds of appeal, contentions, or arguments he wanted us to consider. J.M. did not file a supplemental brief.

Based on our independent review of the entire file, we conclude that there are no arguable issues on appeal. We therefore affirm the adjudication and disposition orders from which J.M. appeals.

# FACTUAL BACKGROUND

## A.  Prosecution's Case

On October 5, 2011, at approximately 8:15 a.m., Denise Rorty was stopped in her car at a stop light at the intersection of Palos Verdes Drive North and Hawthorne Boulevard. According to Rorty, it had previously been raining, but at the time she stopped at the intersection, it was not raining and the road was not wet. While she was stopped, she observed a small white car "zoom" past her "going incredibly fast." Rorty explained that "it was traveling so fast. It was like a bullet. [I]t seemed like the gas pedal was [stuck]. [Rorty's] first impression, was that there had to be something wrong with the car like the gas pedal was stuck because it passed cars, and it was just so fast." Rorty estimated that the car was traveling 70 miles per hour. The car passed through the cross-walk, hit the curb, went into the grass, hit a light pole on the driver's side, and came to a stop in a "grass dirt area." Rorty looked at the woman in the car next to her, and they

2

"exchanged expressions like, 'Oh, my God.'" The woman in that car immediately went over to the passenger side of the car that had hit the light pole, looked inside, and told Rorty to call 911.

On October 5, 2011, Los Angeles County Deputy Sheriff Jeffrey Farmar was assigned to the Lomita Sheriff's station. At approximately 8:25 a.m., he responded to a traffic collision at the intersection of Palos Verdes Drive North and Hawthorne Boulevard involving a white Honda Civic. It had been raining "on and off" that morning and at times the rain had come "down quite heavily." Pictures taken at the scene showed that the roadway was wet. When the deputy arrived at the scene, there was already another deputy there blocking traffic on Palos Verdes Drive North, and paramedics had also responded. The deputy observed a white Honda Civic on the southwest corner of the intersection with damage to the rear driver's side door. Deputy Farmar observed that the driver's side airbag had deployed, but that the passenger side airbag had not deployed. Deputy Farmar contacted J.M. who said he was the driver of the Honda Civic. He then observed a female lying on the ground outside the front passenger door. Paramedics at the scene pronounced the female passenger dead. When Deputy Farmar ran J.M.'s driver's license through the computer in his vehicle, he learned that J.M. had been licensed to drive since October 2010, that his license was provisional, and that he was not authorized to transport anyone under the age of 20. The victim passenger, Annamay Rebecca Naef, was 16 years old. The white Honda Civic was registered to J.M.

Christopher Rogers, a deputy medical examiner for the County of Los Angeles, performed an autopsy on the victim. In his opinion, the cause of death was blunt head trauma. During the autopsy, he observed lacerations on the left side of the the victim's skull and underneath those lacerations there were fractures of the skull. In addition, the brain showed some lacerations in the area of the fractures and also some bruising.

On October 5, 2011, Los Angeles County Deputy Sheriff Reece Souza was working as a traffic collision investigator assigned to the Lomita Sheriff's station. On that date, he responded to the scene of the collision involving J.M. His purpose in responding was to investigate the cause of the fatal collision. He determined that J.M.

was driving at an unsafe speed for the road conditions in violation of Vehicle Code section 22350. He also determined that there were no skid marks at the scene because the roadway was wet. Although the tread on the tires of J.M.'s car appeared to be a "little thin," Deputy Souza determined that the tires did meet the minimum legal requirement for tread depth of tires. The deputy explained that as J.M.'s vehicle was driving through the intersection, the rear tires hydroplaned or skidded, causing the vehicle to rotate and hit the light pole. Had J.M.'s tires had a deeper tread depth, it was possible that the vehicle would not have rotated.

Deputy Souza estimated that J.M.'s car was traveling approximately 45 to 50 miles per hour when it entered the intersection. The posted speed limit at the intersection was 45 miles per hour with all conditions being good. But because of the reduced traction on the roadway due to the rain and the poor condition of J.M.'s tires, the safe speed would not have been 45 miles per hour. If the roadway was wet, the safe speed would have been 35 to 40 miles per hour, but if the roadway was covered with water due to heavy rain, the safe speed would have been closer to 20 miles per hour. Deputy Souza had read a report by J.M.'s expert, Dale Stephens. He agreed with the report because his estimate of J.M.'s speed at the time of the accident was within five miles per hour of the expert's estimate.

### B. Defendant's Case

J.M.'s expert, Dale Stephens, was a Los Angeles County Superior Court-approved accident reconstructionist. In his opinion, J.M.'s car was traveling between 40 to 45 miles per hour at the time of the accident. He agreed that the tread depth of the tires on J.M.'s car was within the minimum legal requirement. Because there was no information about the braking and steering systems of J.M.'s car, he could not rule out that a mechanical malfunction contributed to the collision. In Stephen's opinion, because it was not possible for J.M.'s car to have been traveling at 70 miles per hour at the time of the collision, he did not think that this was a case of felony manslaughter.

4

**PROCEDURAL BACKGROUND**

In a petition filed against J.M. under Welfare and Institutions Code section 602, the Los Angeles County District Attorney charged J.M. with felony vehicular manslaughter in violation of Penal Code section 192, subdivision (c)(1). J.M. denied the allegation. At the adjudication hearing, the juvenile court found the allegation in the one-count petition true, reduced the charge to a misdemeanor pursuant to Penal Code section 192, subdivision (c)(2), and sustained the petition. The juvenile court ordered J.M. home on probation and indicated that jurisdiction would terminate in May 2014 provided J.M. had completed a grief counseling course by that time. J.M. filed a timely notice of appeal.

**DISCUSSION**

Pursuant to *People v. Wende, supra*, 25 Cal.3d 436, we examined the entire record to determine if there were any arguable issues on appeal. Based on that independent review, we have determined there are no arguable issues on appeal. We are therefore satisfied that J.M.'s appointed counsel has fully satisfied his responsibilities under *Wende, supra*, 25 Cal.3d 436.

## DISPOSITION

The adjudication and disposition orders from which J.M. appeals are affirmed.


MOSK, J.


We concur:


TURNER, P. J.


GOODMAN, J.[*]

---

[*] Judge of the Superior Court of Los Angeles County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.